## RICHTER *v.* FRANK.

### *(Circuit Court, N. D. Illinois.* March 17, 1890.)

1. **GUARANTY—RELEASE OF GUARANTOR.**
   Plaintiff bought stock in a land and cattle company from S. Bros., with the option of reselling to them within a certain time, and defendant guarantied performance of the contract by S. Bros. Afterwards this company sold out to another, and transferred to it all its property; but plaintiff had been asked to consent to the sale and to take stock in the new company in exchange for his, and had refused, saying he relied on defendant's guaranty. Plaintiff's stock had never been transferred to him on the books of the company, and remained in the name of S. Bros., who voted on it in voting for the sale, but there was stock enough besides this to authorize the sale. Defendant also owned stock and voted on it. *Held,* that defendant was not released from his guaranty.

2. **SAME—GAMBLING CONTRACTS—OPTION TO BUY OR SELL STOCK.**
   A contract by which stock is sold at a certain price with the option to the purchaser to resell it at a future time for an increased price, which increase is only the amount of interest which, by the time for exercising the option, would accrue on the amount paid for the stock, is not a gambling contract within Rev. St. Ill. c. 38, § 130, which makes it a penal offense to give an option to buy or sell, at a future time, stock in any railroad or other company, and declares such contracts to be gambling contracts.

3. **SAME—EXECUTION IN ANOTHER STATE.**
   Where a contract is executed in a state in which it is valid, and a person there agrees to guaranty its performance, the guaranty is valid, though it is actually affixed in a state in which the contract is void.

At Law.

*C. H. Renny,* for plaintiff.

*A. M. Pence,* for defendant.

BLODGETT, J. This is an action against defendant as guarantor upon a contract, dated December 12, 1885, between the firm of Swan Bros., doing business at Cheyenne, Wyo., parties of the first part, and the plaintiff, as party of the second part. The contract in question recites, in substance, that the party of the first part, Swan Bros., has sold to plaintiff 550 shares, of $100 each, in the capital stock of the Horse Creek Land & Cattle Company of Wyoming Territory, for which the plaintiff has paid to them $55,000, on condition that plaintiff should have the right to elect to resell said stock to Swan Bros., at any time between the

15th of December, 1888, and the 1st of January, 1889, for the sum of $71,500, on the tender of the stock to them in the manner specially provided for in the contract. And the defendant, by an agreement written at the foot of the original contract, guarantied the performance by Swan Bros. of all the stipulations, covenants, and agreements in said contract, on their part to be performed.

It is conceded that plaintiff elected to resell the stock in question, and gave notice of such election in apt time to the Swan Bros., and that he also, within the time limited by the contract, tendered the stock to the Swan Bros., as required by the contract, and that they failed and refused to pay the plaintiff the sum of $71,500 therefor, and this suit is brought to recover from defendant the amount which Swan Bros. should, by the terms of their contract, have paid the plaintiff for the stock. The defenses are: (1) That, after the making of said guaranty by the defendant, all the assets of the Horse Creek Land & Cattle Company were, without the knowledge and assent of plaintiff, sold to the Cheyenne Land & Live-Stock Company, thereby rendering the stock so sold by Swan Bros. to plaintiff valueless, and so changed the subject-matter of the contract guarantied by the defendant as to release defendant from his guaranty. (2) That the contract in question between Swan Bros. and plaintiff is a gambling contract, within the provisions of section 130, c. 38, Rev. St. Ill.; and as the defendant's guaranty was made in the state of Illinois, it is void as a violation of said statute.

It is conceded that, in the latter part of the summer, or in the fall, of 1886, the Horse Creek Land & Cattle Company sold to the Cheyenne Land & Live-Stock Company all its lands, cattle, and personal property of every description, for which the stockholders in the Horse Creek Company were to receive what was deemed an equivalent in the stock and bonds of the Cheyenne Land & Live-Stock Company. It is also conceded that plaintiff never had the 550 shares of stock transferred to him upon the books of the Horse Creek Company, and that Swan Bros., in whose name the stock was allowed to stand, voted upon it in favor of the said transfer of the property of the Horse Creek Company to the Cheyenne Land & Live-Stock Company. The proof, I think, wholly fails to show that the plaintiff ever consented to such transfer, or was a party to it. The proof does show that, some time in the summer of 1886, before the sale of the assets of the Horse Creek Company was made to the Cheyenne Company, the plaintiff had notice that such a disposition of the assets of the Horse Creek Company was contemplated, and he was asked to assent to it, and to accept the stock and bonds of the Cheyenne Land & Live-Stock Company in place of the stock transferred to him by the Swan Bros. under the contract, and that he declined to do so, saying, in substance, that he relied upon the defendant's guaranty, and would not consent to any change in the character of the stock. The proof also shows that defendant was a holder of stock in the Horse Creek Company, and voted in favor of transferring its assets to the Cheyenne Land & Live-Stock Company, which might of itself be a sufficient answer to this branch of the defense, although I do not deem it necessary

to decide as to the sufficiency of this fact alone as a defense. The proof also shows that the capital stock of the Horse Creek Company consisted of 2,000 shares, and that the vote of the 550 shares of stock sold to the plaintiff was not needed to confirm or ratify the transfer of the assets to the Cheyenne Land & Live-Stock Company. It is, therefore, quite clear that the first position taken by the defense is not sustained by the proof.

As to the second position of the defense, that the contract guarantied by the defendant is a gambling contract, within the provisions of the Illinois statute, much reliance is placed by defendant on the case of *Schneider* v. *Turner*, 22 N. E. Rep. 497, lately decided by the supreme court of the state of Illinois, (and not yet officially reported, but a manuscript copy of the opinion has been furnished by the defendant's counsel,) where an agreement to sell shares in one of the street railroads of this city, at a certain price per share, if payment was made by a certain day, was held to be within the statute, and void. Section 130, chapter 38, of the Illinois Revised Statutes makes it a penal offense to contract to have, or to give, an option to sell or buy at a future time any grain or other commodity, stock of any railroad or other company, etc., and provides that all contracts made in violation of this section shall be considered gambling contracts, and void. It is a sufficient answer, I think, to this position of defendant that, as I construe this contract, it is not a gambling contract and within the provisions of this statute. It is true the contract, by its letter, purports to be a sale of the 550 shares of stock to the plaintiff, with an option to resell at a stated price, if the plaintiff so elects, within a limited time, but, when considered altogether, the sale, as I construe it, is conditional up to the first of January, 1889. It is conceded that the amount to be paid by the Swan Bros. to the plaintiff under this contract, if he elected to return the stock to them, was the original $55,000 paid by the plaintiff to Swan Bros., and simple interest thereon at the rate of 10 per cent. per annum for the term of three years, and the obvious intention of the parties was that the plaintiff had until the 1st of January, 1889, to decide whether he would keep the stock, or return it to the Swan Bros. and receive back his money and 10 per cent. interest. This is my conclusion, not from the parol proof as to the understanding of the parties in regard to the meaning and import of the contract, but from the language of the contract itself when all considered together. The contract begins with the recital that the Swan Bros. are about to sell the 550 shares of stock to plaintiff, and that plaintiff is desirous of purchasing the same with a guaranty of profit thereon. And in the first article it is stated that plaintiff agrees to purchase the stock under the provisions and conditions thereinafter set forth, and the conditions so set forth are that plaintiff shall have the right to return the stock to the Swan Bros. between the 15th of January, 1888, and the 1st of January, 1889, and receive his $55,000 and 10 per cent. interest. Up to that time the sale is conditional. The testimony of Alexander H. Swan, one of the parties to the contract, is confirmatory of this view, so far as such testimony may be considered confirmatory in construing a contract of this character. He testifies that his firm considered the transaction to

be only a loan by plaintiff to his firm of this $55,000, and plaintiff only held the stock as collateral. The certificates of stock were delivered to the plaintiff, but by the terms and conditions of the contract he was given until the 1st of January, 1889, to decide or elect whether he would keep the stock or return it. The transaction seems to me an entirely natural and proper one, and neither within the terms of the Illinois statute, or the mischief it was intended to remedy. It contains no element, as it seems to me, of a gambling contract, when to this view of the import and legal effect of the contract is supplemented the fact that the whole negotiations between the plaintiff and Swan Bros. were conducted by defendant as the agent of Swan Bros.; that plantiff took the stock with the understanding and assurance that defendant would guaranty the contract, and that all the negotiations and the terms of the contract were had and agreed upon in New York between the plaintiff and defendant before the contract was executed; that the contract itself was executed in Nebraska, where it was entirely lawful, and that, in appending his guaranty in Chicago, the defendant had done no more than he had agreed to do in New York, and without which agreement the plaintiff would not have parted with his money. It seems to me defendant should not be heard to invoke this Illinois statute as a defense. The issues are, therefore, found for the plaintiff, and judgment will be entered for the full amount of the money, to be paid with interest since January 1, 1889.